SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

INDEX NO. 50524/2024

JORGE AREVALO,

Plaintiff,

- against -

KIRK VAN WORMER; TECHTRONIC INDUSTRIES CO. LTD.; TECHTRONIC INDUSTRIES NORTH AMERICA, INC.; ONE WORLD TECHNOLOGIES, INC.; RYOBI TECHNOLOGIES, INC.; HOME DEPOT U.S.A. INC.,a/k/a THE HOME DEPOT, INC; EMERSON ELECTRIC, CO. and RIDGID, INC.,

Defendants.

Plaintiff designates Westchester County as Place for Trial

The basis of the venue is Plaintiff's Residence and Location of Accident

SUMMONS WITH NOTICE

Plaintiff resides at:
4 Maple Place, Apt. #1
Ossining, NY 10562

To the above named Defendants:

YOU ARE HEREBY SUMMONED, to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the plaintiff's attorney(s) within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded herein.

Dated: Tarrytown, New York
September 5, 2024

Defendant's Address:

CHARLES R. GREEBEL, ESQ.
Attorney for Plaintiff
15 Neperan Road
Tarrytown, New York 10591
(914) 631-5900

NOTICE: The nature of this action is for numerous permanent injuries sustained by the plaintiff, on or about the 10th day of September, 2021, due to the negligence and carelessness of the Defendants is the 1st, 2nd, 3rd, 4th, 5th 6th, 7th and 8th causes of action in the operation, ownership, management and control of the equipment at or about, outside and in front of 111 Nassau Place, Peekskill, New York. The relief sought is money damages.

Upon failure to appear, judgment will be taken against you by default in an amount that exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction, together with the costs and disbursements of this action.
INDEX NUMBER PURCHASED AND SUMMONS AND COMPLAINT FILED WITH THE WESTCHESTER COUNTY CLERK'S OFFICE ON SEPTEMBER , 2024.

State of New York, County of ss.:

being duly sworn, deposes and says; that deponent is not a party to the action, is over 18 years of age and resides at

That on 19 at No.

deponent served the within summons on

defendant

INDIVIDUAL 1. ☐ by delivering a true copy of each to said defendant personally; deponent knew the person so served to be the person described as said defendant therein.

a corporation, by delivering thereat a true copy of each to

CORPORATION 2. ☐ personally, deponent knew said corporation so served to be the corporation described in said summons as said defendant and knew said individual to be thereof

SUITABLE AGE PERSON 3. ☐ by delivering thereat a true copy of each to a person of suitable age and discretion. Said premises is defendant's—actual place of business—dwelling house—usual place of abode—within the state.

AFFIXING TO DOOR, ETC. 4. ☐ by affixing a true copy of each to the door of said premises, which is defendant's—actual place of business—dwelling house—usual place of abode—within the state. Deponent was unable, with due diligence to find defendant or a person of suitable age and discretion, thereat, having called there

MAILING USE WITH 3 or 4 ☐ Deponent also enclosed a copy of same in a postpaid sealed wrapper properly addressed to defendant at defendant's last known residence, at

and deposited said wrapper in a post office official depository under exclusive care and custody of the United States Postal Service within New York State.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

JORGE AREVALO,

Plaintiff,

against

KIRK VAN WORMER, TECHTRONIC INDUSTRIES CO. LTD., et al
(See Full CAPTION)

Defendant.

# Summons

Action not based upon a Consumer Credit Transaction

CHARLES R. GREEBEL, ESQ.

Attorney(s) for Plaintiff

Office, Post Office Address and Tel. No.
15 Neperan Road
Tarrytown, New York 10591
(914) 631-5900

DESCRIPTION USE WITH 1 or 3 ☐ Deponent describes the individual served as follows: sex: ☐ male ☐ female;
approximate age: ☐ 14-20, ☐ 21-35, ☐ 36-50, ☐ 51-65, ☐ over 65
approximate height: ☐ under 5', ☐ 5' to 5' 3", ☐ 5' 4" to 5' 8", ☐ 5' 9" to 6', ☐ over 6'
approximate weight: ☐ under 100 lbs. ☐ 100 to 130 lbs., ☐ 131 to 160 lbs. ☐ 161 to 200 lbs., ☐ over 200 lbs.
skin color: ☐ black, ☐ brown, ☐ red, ☐ white, ☐ yellow
hair color: ☐ black, ☐ blonde, ☐ brown, ☐ grey, ☐ red, ☐ white, ☐ balding
Other identifying features:

Sworn to before me on

# FULL CAPTION

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER
-----------------------------------------x INDEX NO. 50524/24

JORGE AREVALO,

Plaintiff,

- against -

KIRK VAN WORMER; TECHTRONIC INDUSTRIES CO. LTD; TECHTRONIC INDUSTRIES NORTH AMERICA, INC.; ONE WORLD TECHNOLOGIES, INC.; RYOBI TECHNOLOGIES, INC.; HOME DEPOT U.S.A. INC., a/k/a THE HOME DEPOT, INC.; EMERSON ELECTRIC, CO. and RIDGID, INC.,

Defendants.
-----------------------------------------x

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

INDEX NO. 50524/24

JORGE AREVALO,

Plaintiff,

VERIFIED COMPLAINT

- against -

KIRK VAN WORMER; TECHTRONIC INDUSTRIES CO. LTD; TECHTRONIC INDUSTRIES NORTH AMERICA, INC.; ONE WORLD TECHNOLOGIES, INC.; RYOBI TECHNOLOGIES, INC.; HOME DEPOT U.S.A. INC., a/k/a THE HOME DEPOT, INC.; EMERSON ELECTRIC, CO. and RIDGID, INC.,

Defendants.

Plaintiff, JORGE AREVALO, complaining of the defendants by his attorney, CHARLES R. GREEBEL, respectfully states and alleges, upon information and belief:

AS AND FOR THE FIRST CAUSE OF ACTION
ON BEHALF OF THE PLAINTIFF, JORGE AREVALO

1. That at the time of the occurrence complained of hereinafter, the plaintiff, JORGE AREVALO, was a resident of the County of Westchester, State of New York.

2. That the incident complained of herein occurred at or about, outside and in front of 111 Nassau Place, Peekskill, New York (hereinafter referred to as "THE LOCATION").

3. That at all times hereinafter mentioned, the defendant, KIRK VAN WORMER,(hereinafter referred to as "WORMER") was the owner of the property and house at THE LOCATION.

4. That at the time of the accident, the defendant, WORMER, was a resident of the County of Westchester, and State of New York.

5. That at all times hereinafter mentioned, the defendant, TECHTRONIC INDUSTRIES CO. LTD., by its servants, agents and

employees, contractors and/or subcontractors, (hereinafter referred to as "TTI"), is a Hong Kong corporation, and/or entity, on information and belief, maintaining its principal place of business, outside the United States. TTI is a large, multi-national corporation that sells power tool and other consumer products throughout the world, either itself and/or through its subsidiaries and/or partners. TTI has the exclusive right to market power tools under the RYOBI name in the United States, Europe, Australia and New Zealand, either itself and/or through its subsidiaries and/or partners. Operating through a variety of wholly-owned American subsidiaries, TTI does substantial business in the United States.

6. That at all times hereinafter mentioned, the defendant, TTI, was a domestic entity, organized and existing under the laws of the State of New York.

7. That at all times hereinafter mentioned, the defendant, TTI, was a domestic entity, licensed to do business in the State of New York.

8. That at all times hereinafter mentioned, the defendant, TTI, was a domestic entity, doing business in the State of New York.

9. That at all times hereinafter mentioned, the defendant, TTI, was a foreign entity, doing business under the laws of the State of New York.

10. That at all times hereinafter mentioned, the defendant, TTI, was licensed to do business within the State of New York.

11. That at all times hereinafter mentioned, the defendant, TTI, is an entity, doing business within the State of New York.

12. That at all times hereinafter mentioned, the defendant, TECHTRONIC INDUSTRIES NORTH AMERICA, INC., by its servants, agents and employees, contractors and/or subcontractors, (hereinafter referred to as "TTI-NA"), is a Delaware corporation, maintaining its principal place of business in within the United States. TTI-NA is a wholly-owned subsidiary of TTI through which TTI manufactures, distributes and sells power tools under the Ryobi name.

13. That at all times hereinafter mentioned, the defendant, TTI-NA, was a domestic entity, organized and existing under the laws of the State of New York.

14. That at all times hereinafter mentioned, the defendant, TTI-NA, was a domestic entity, licensed to do business in the State of New York.

15. That at all times hereinafter mentioned, the defendant, TTI-NA, was a domestic entity, doing business in the State of New York.

16. That at all times hereinafter mentioned, the defendant, TTI-NA, was a foreign entity, doing business under the laws of the State of New York.

17. That at all times hereinafter mentioned, the defendant, TTI-NA, was an entity licensed to do business within the State of New York.

18. That at all times hereinafter mentioned, the defendant,

TTI-NA, is an entity doing business within the State of New York.

19. That at all times hereinafter mentioned, the defendant, ONE WORLD TECHNOLOGIES, INC., by its servants, agents and employees, contractors and/or subcontractors, (hereinafter referred to as "ONE WORLD"), is a Delaware corporation, maintaining its principal place of business within the United States. ONE WORLD is a wholly-owned subsidiary of TTI through which TTI manufactures, distributes and sells power tools under the Ryobi name.

20. That at all times hereinafter mentioned, the defendant, ONE WORLD, was a domestic entity, organized and existing under the laws of the State of New York.

21. That at all times hereinafter mentioned, the defendant, ONE WORLD, was a domestic entity, licensed to do business in the State of New York.

22. That at all times hereinafter mentioned, the defendant, ONE WORLD, was a domestic entity, doing business in the State of New York.

23. That at all times hereinafter mentioned, the defendant, ONE WORLD, was a foreign entity, doing business under the laws of the State of New York.

24. That at all times hereinafter mentioned, the defendant, ONE WORLD, was licensed to do business within the State of New York.

25. That at all times hereinafter mentioned, the defendant, ONE WORLD, is doing business within the State of New York.

26. That at all times hereinafter mentioned, the defendant, RYOBI TECHNOLOGIES, INC.; by its servants, agents and employees, contractors and/or subcontractors, (hereinafter referred to as "RYOBI"), is a Delaware corporation, maintaining its principal place of business within the United States. RYOBI, is a wholly-owned subsidiary of TTI, TTI-NA and/or ONE WORLD and manufactures, distributes and sells power tools under the Ryobi name.

27. That at all times hereinafter mentioned, the defendant, RYOBI, was a domestic entity, organized and existing under the laws of the State of New York.

28. That at all times hereinafter mentioned, the defendant, RYOBI, was a domestic entity, licensed to do business in the State of New York.

29. That at all times hereinafter mentioned, the defendant, RYOBI, was a domestic entity, doing business in the State of New York.

30. That at all times hereinafter mentioned, the defendant, RYOBI, was a foreign entity, doing business under the laws of the State of New York.

31. That at all times hereinafter mentioned, the defendant, RYOBI, was licensed to do business within the State of New York.

32. That at all times hereinafter mentioned, the defendant, RYOBI, is doing business within the State of New York.

33. That at all times hereinafter mentioned, the defendant, HOME DEPOT U.S.A. INC., a/k/a THE HOME DEPOT, INC., by its

servants, agents and employees, contractors and/or subcontractors, (hereinafter referred to as "HOME DEPOT"), is a Delaware corporation, maintaining its principal place of business within the United States.

34. That at all times hereinafter mentioned, the defendant, HOME DEPOT, was a domestic entity, organized and existing under the laws of the State of New York.

35. That at all times hereinafter mentioned, the defendant, HOME DEPOT, was a domestic entity, licensed to do business in the State of New York.

36. That at all times hereinafter mentioned, the defendant, HOME DEPOT, was a domestic entity, doing business in the State of New York.

37. That at all times hereinafter mentioned, the defendant, HOME DEPOT, was a foreign entity, doing business under the laws of the State of New York.

38. That at all times hereinafter mentioned, the defendant, HOME DEPOT, was licensed to do business within the State of New York.

39. That at all times hereinafter mentioned, the defendant, HOME DEPOT, is doing business within the State of New York.

40. That at all times hereinafter mentioned, the defendant, EMERSON ELECTRIC, CO., by its servants, agents and employees, contractors and/or subcontractors, (hereinafter referred to as "EMERSON"), was a domestic entity, organized and existing under the laws of one or more states of the United States.

41. That at all times hereinafter mentioned, the defendant, EMERSON, was a domestic entity, licensed to do business in the State of New York.

42. That at all times hereinafter mentioned, the defendant, EMERSON, was a domestic entity, doing business in the State of New York.

43. That at all times hereinafter mentioned, the defendant, EMERSON, was a foreign entity, doing business under the laws of the State of New York.

44. That at all times hereinafter mentioned, the defendant, EMERSON, was licensed to do business within the State of New York.

45. That at all times hereinafter mentioned, the defendant, EMERSON, is doing business within the State of New York.

46. That at all times hereinafter mentioned, the defendant, RIDGID, INC., by its servants, agents and employees, contractors and/or subcontractors, (hereinafter referred to as "RIDGID"), was a domestic entity, organized and existing under the laws of the State of New York.

47. That at all times hereinafter mentioned, the defendant, RIDGID, was a domestic entity, licensed to do business in the State of New York.

48. That at all times hereinafter mentioned, the defendant, RIDGID, was an entity, doing business in the State of New York.

49. That at all times hereinafter mentioned, the defendant, RIDGID, was a foreign entity, doing business under the laws of

the State of New York.

50. That at all times hereinafter mentioned, the defendant, RIDGID, is doing business within the State of New York.

51. That upon information and belief, on or about the 10th day of September, 2021, the defendant, WORMER, hired an unlicensed contractor to perform work at THE LOCATION.

52. That upon information and belief, on or about the 10th day of September, 2021, the defendant, WORMER, hired an unregistered contractor to perform work at THE LOCATION.

53. That upon information and belief, on or about the 10th day of September, 2021, the defendant, WORMER, allowed dangerous instruments to be used to perform work at THE LOCATION.

54. That upon information and belief, on or about the 10th day of September, 2021, the defendant, WORMER, directed, controlled and supervised the work at THE LOCATION, or should have.

55. That upon information and belief, the defendant, WORMER, bought THE LOCATION, as an investment property

56. That upon information and belief, the defendant, WORMER, bought THE LOCATION, to rent to others.

57. That upon information and belief, the defendant, WORMER, was suppose to obtain building permits and failed to do so.

58. That upon information and belief, the defendant, WORMER, was suppose to use licensed contractors.

59. That upon information and belief, on or about the 10th day of September, 2021, one or more of the defendants were the designer, manufacturer, tester, supplier, seller and/or distributor of a Ryobi 10-inch table saw, Serial Number LL20341D0485761, (hereinafter the "RYOBI SAW") and had distributed, supplied and/or sold the Ryobi Saw, which is also sold under the RIDGID name, as set forth herein before and herein after.

60. Upon information and belief, at some point prior to the 10th day of September, 2021, defendant HOME DEPOT, distributed or sold the Ryobi Saw.

61. The RYOBI SAW, used at THE LOCATION, was designed, manufactured and sold by one or more of the defendants, and contains a number of design and/or manufacturing defects to render it dangerous when used in ordinary and foreseeable ways. These defects include, but are not limited to: the failure to equip the RYOBI SAW, with a user-friendly blade guard, the failure to equip the RYOBI SAW, with an independent riving knife, the failure to equip the RYOBI SAW with a retractable over-the-arm blade guard and the failure to equip the RYOBI SAW, with a flesh-detection and braking technology.

62. One or more of the defendants, as manufacturers, distributors and designers of power saws have failed to utilize available safer technology in their saws that were sold and distributed at HOME DEPOT stores.

63. The RYOBI SAW also comes with a splitter or a spreader

attached to the guard, which is designed to prevent "kickbacks" during cutting. A kickback is often the result of the saw blade being pinched by the wood as it is being cut. The back of the saw blade can cause the wood to jerk or kick back at high velocity into the user, causing the user's hands to land on the saw blade or to be pulled into the blade. Kickback, such as that which occurred here, are common and can cause catastrophic injuries.

64. One or more of the defendants designed the splitter or spreader on the RYOBI SAW, to be attached directly to the guard so that, when the guard is removed, as it often is, no kickback protection is provider the user.

65. However, one or more of the defendants have known or should have known that kickbacks can be substantially avoided by providing necessary safety equipment using a "riving knife" rather than a spreader. 63. The RYOBI SAW used herein did not include a riving knife.

66. The RYOBI SAW did not contain a warning that the removal of the all-in-one blade guard substantially increased the likelihood of kickback accidents.

67. There has also been technology that, for example, would stop a power saw blade almost instantly upon contact with human flesh, thereby avoiding the traumatic injury suffered by the plaintiff.

68. One ore more of the defendants failed to pursue licensing and use of this available technology, or to implement

any alternative technology or to mitigate or eliminate the effects of accidental blade contact with human flesh.

69. The RYOBI SAW does not incorporate flesh detection and breaking technology, or other comparable safety technology.

70. Had one or more of the defendants employed these safer available technologies on the RYOBI SAW, the plaintiff would not have been injured, or the severity of his injury would have been substantially reduced.

71. In addition, the RYOBI SAW, was defective because the small size of the table top, and in particular the short distance between the leading edge of the table top and the front edge of the saw required that plaintiff's to place his hands dangerously close to the spinning saw blade while operating the saw, significantly increasing his risk of blade contact in the event of an accident.

72. Had the RYOBI SAW, not incorporate these design defects, the plaintiff would not have been injured, or the severity of his injury while using the RYOBI SAW. At the time of the accident, the plaintiff was exercising all due care for his own safety and the plaintiff was free from contributory negligence.

73. That on or about September 10, 2021, while in the course of the plaintiff's employment, the plaintiff was cutting wood on a circular (table) saw, when one piece of wood jumped up instead of going through the table saw and the plaintiff's hand went into the saw, causing lacerations, fractures and

dislocations to four (4) fingers on his left hand. Due to severity of injuries, his left middle finger had to be amputated and his left ring finger and pinky were partially severed and had to be surgically reduced due to their injuries.

74. That one or more of the defendants was responsible for the direction or control of the work done at THE LOCATION.

75. Prior to and on or about September 10, 2021, one or more of the defendants inspected the equipment for the work being performed at THE LOCATION.

76. On information and belief, the plaintiff was injured, because at the time he was using the table saw, the safety guard was not attached to the saw.

77. That one or more of the defendants failed to provide the proper safe equipment for the work to be performed at THE LOCATION.

78. It was the duty of the one or more of the defendants to see that plaintiff, while engaged in the performance of his work at THE LOCATION, was provided with reasonably safe equipment, and with reasonably safe tools and implements, with which to do and perform the work required of plaintiff, and upon a suitable and proper inspection, to keep and maintain the equipment and tools in a reasonably safe and secure condition, and to give this plaintiff notice and warning of the existence of the dangers and perils attending the performance of his duties upon THE LOCATION.

79. That on September 10, 2021, and for a period before that date, one or more of the defendants, was the general

contractor and/or contractor of the work to be done at THE LOCATION.

80. That on September 10, 2021, and for a period before that date, one or more of the defendants, was the contractor, who hired the subcontractor to perform work at THE LOCATION.

81. That on September 10, 2021, and for a period before that date, one or more of the defendants, was the general contractor, who hired the subcontractor to perform work at THE LOCATION.

82. That on September 10, 2021, and for a period before that date, one or more of the defendants, employed a subcontractor to do the work at THE LOCATION.

83. That on September 10, 2021, and for a period before that date, one or more of the defendants, as the owner, general contractor and/or contractor, was to supervise the subcontractor, regarding work that they were doing at THE LOCATION.

Same

84. That on information and belief, on a date before September 10, 2021, TWINS HARDWOOD FLOORING CORP., submitted a written proposal to one or more of the defendants, to do work at THE LOCATION.

85. That on September 10, 2021, TWINS HARDWOOD FLOORING CORP. was the employer of the plaintiff and doing work at THE LOCATION.

86. That on a date before September 10, 2021, TWINS HARDWOOD FLOORING CORP.'s proposal for work at THE LOCATION, was

accepted by one or more of the defendants.

87. That on September 10, 2021, while the plaintiff was in the course of his employment at THE LOCATION, the plaintiff was injured.

88. That on a date before September 10, 2021, the plaintiff was assigned to do work at THE LOCATION.

89. That at the time the plaintiff was working and he was injured.

90. That the owner and/or contractor or general contractor had the responsibility to make sure the plaintiff had a safe place to work and have appropriate personnel present.

91. That pursuant to the contract between one or more of the defendants, the defendants had the obligation to make sure the plaintiff had a safe place to work and have appropriate personnel present.

92. That one or more of the defendants were negligent in failing to make sure the plaintiff had a safe place to work.

93. That on September 10, 2021, and for sufficient days and weeks before that date, one or more of the defendants failed to have safety meetings or to make sure safety meetings were held.

94. That on September 10, 2021, and for sufficient days and weeks before that date, one or more of the defendants failed to comply with OSHA regulations.

95. That while in the course of the plaintiff's employment, the plaintiff was cutting wood using a table saw when the wood jumped up instead of going through the table saw and the

plaintiff's hand went through the table saw causing the injuries to the plaintiff.

96. That one or more of the defendants were negligent in failing to have a spotter and/or other safety personnel present.

97. That one or more of the defendants were negligent in failing to make sure that safety personnel were present to make sure that the machine was being used in a safe manner, and that a retractable over-the-arm blade guard was in use, when the plaintiff was injured.

98. That on September 10, 2021, and for a period before that date, one or more of the defendants controlled THE LOCATION, or should have.

99. That on September 10, 2021, and for a period before that date, one or more of the defendants supervised the work at THE LOCATION, or should have.

100. That on September 10, 2021, and for a period before that date, one or more of the defendants, was the general contractor and/or contractor of the work to be done at THE LOCATION.

101. That on September 10, 2021, and for a period before that date, one or more of the defendants, was the contractor, who hired the subcontractor to perform work at THE LOCATION.

102. That on September 10, 2021, while the plaintiff was performing construction work at THE PROPERTY and at THE LOCATION for his employer, the plaintiff was injured.

103. That the owner and/or contractor or general contractor

had the responsibility to make sure the plaintiff had a safe place to work and have appropriate personnel present.

104. That pursuant to the contract between two or more of the defendants, the defendants had the obligation to make sure the plaintiff had a safe place to work and have appropriate personnel present.

105. That one or more of the defendants were negligent in failing to make sure the plaintiff had a safe place to work.

AS AND FOR THE SECOND CAUSE OF ACTION
ON BEHALF OF THE PLAINTIFF, JORGE AREVALO

106. Plaintiff realleges and repeats each and every allegation contained in paragraphs 1 through 105 and incorporates each as if fully set forth herein.

107. One or more of the defendants placed the table saw that injured the plaintiff on the market, know that it would be used without inspection for defect.

108. The table saw that was placed on the market by one or more of the defendants, and which injured the plaintiff, was defective.

109. The defect in the table saw caused the plaintiff's injuries, causing plaintiff to sustain severe, serious and grave and permanent physical injury great pain of body and anguish of mind, required extensive hospital, surgeries and medical care and treatment, incurred medical expenses, lost time from work; and impaired by his ability to engage in normal and usual activities and past, present and future lost wages.

110. The defendants are strictly liable.

AS AND FOR THE THIRD CAUSE OF ACTION
ON BEHALF OF THE PLAINTIFF, JORGE AREVALO

111. Plaintiff realleges and repeats each and every allegation contained in paragraphs 1 through 110 and incorporates each as if fully set forth herein.

112. One or more of the defendants, impliedly warranted to the plaintiff that the RYOBI SAW and its component parts were merchantable, safe and fit for ordinary purposes. One or more of the defendants, are merchants with respect to goods as the kind involved in the accident. The product, component parts of the product and the product warning and instructions were defective, and therefore, the product was not, in fact, merchantable, safe and fit, as warranted by one or more of the defendants. One or more of the defendants, therefore, breached these warranties to the plaintiff.

113. As the direct and proximate result of one or more of the defendants' breaches of warranties, the plaintiff sustained severe and permanent physical injury, suffered great pain of body and anguish of mind, required extensive hospital and medical care and treatment, incurred medical expenses, lost time from work; and his ability to engage in normal and usual activities has been adversely affected.

AS AND FOR THE FOURTH CAUSE OF ACTION
ON BEHALF OF THE PLAINTIFF, JORGE AREVALO

114. Plaintiff realleges and repeats each and every allegation contained in paragraphs 1 through 113 and incorporates

each as if fully set forth herein.

115. One or more of the defendants, were negligent with respect to the designing, manufacturing, testing, inspecting, distributing and selling of the RYOBI SAW and was negligent with respect to equipping the RYOBI SAW with adequate safe guards, warnings and/or instructions.

116. As the direct and proximate result of one or more of the defendants' negligence, the plaintiff sustained severe, serious, grave and permanent physical injury, suffered great pain of body and anguish of mind, required extensive surgeries, hospital and medical care and treatment, incurred medical expenses, lost time from work; and his ability to engage in normal and usual activities has been adversely affected.

AS AND FOR THE FIFTH CAUSE OF ACTION
ON BEHALF OF THE PLAINTIFF, JORGE AREVALO

117. Plaintiff realleges and repeats each and every allegation contained in paragraphs 1 through 116 and incorporates each as if fully set forth herein.

118. The defendant, HOME DEPOT, sold and distributed the table saw, which was designed to its specifications.

119. The defendant, HOME DEPOT, placed the table saw on the market, knowing that it would be used without inspection for defect.

120. The table saw that was placed on the market by the defendant, HOME DEPOT and which injured the plaintiff, was defective.

121. The defect in the table saw caused the plaintiff's

injuries, causing plaintiff to sustain severe and permanent physical injury great pain of body and anguish of mind, required extensive hospital and medical care and treatment, medical expenses, lost time from work; and impaired by his ability to engage in normal and usual activities.

122. The defendant, HOME DEPOT, is strictly liable.

AS AND FOR THE SIXTH CAUSE OF ACTION
ON BEHALF OF THE PLAINTIFF, JORGE AREVALO

123. Plaintiff realleges and repeats each and every allegation contained in paragraphs 1 through 122 and incorporates each as if fully set forth herein.

124. The defendant, HOME DEPOT and/or one or more of the defendants, impliedly warranted to the plaintiff that the RYOBI SAW and its component parts were merchantable, safe and fit for ordinary purposes. The defendant, HOME DEPOT, is a merchant with respect to goods as the kind involved in the accident. The product, component parts of the product and the product warning and instructions were defective, and therefore, the product was not, in fact, merchantable, safe and fit as warranted by the defendant, HOME DEPOT. The defendant, HOME DEPOT therefore, breached these warranties to the plaintiff.

125. As the direct and proximate result of the defendant, HOME DEPOT's breach of warranties, the plaintiff sustained severe and permanent physical injury, suffered great pain of body and anguish of mind, required extensive hospital and medical care and treatment, incurred medical expenses, lost time from work; and his ability to engage in normal and usual activities has been

adversely affected.

126. Plaintiff realleges and repeats each and every allegation contained in paragraphs 1 through 132 and incorporates each as if fully set forth herein.

127. The defendant, HOME DEPOT, was negligent with respect to the designing, manufacturing, testing, inspecting, distributing and selling of the RYOBI SAW and was negligent with respect to equipping the RYOBI SAW with adequate safe guards, warnings and/or instructions and a failure to direct that it be manufactured in a manner to protect the plaintiff to use.

128. As the direct and proximate result of the defendant, HOME DEPOT's negligence, the plaintiff sustained severe and permanent physical injury, suffered great pain of body and anguish of mind, required extensive hospital and medical care and treatment, incurred medical expenses, lost time from work; and his ability to engage in normal and usual activities has been adversely affected.

AS AND FOR THE SEVENTH CAUSE OF ACTION
ON BEHALF OF THE PLAINTIFF, JORGE AREVALO

129. Plaintiff realleges and repeats each and every allegation contained in paragraphs 1 through 128 and incorporates each as if fully set forth herein.

130. That one or more of the defendants violated Section 200 of the NYS Labor Law.

131. That one or more of the defendants violated Section 241 sub division 6 of the NYS Labor Law and the Industrial Code of the State of New York and the Rules and Regulations of the State

of New York, including but not limited to Section 23-1.12 and more specifically one or more of the following: 23-1.12 © 2 and 23-1.12 © 3.

132. That one or more of the defendants violated the various provisions of the Occupational Safety and Health Act as set forth in the Code of Federal Regulations.

133. That one or more of the defendants violated the various provisions of the Occupational Safety and Health Act as set forth in the NYS OSHA Rules and Regulations and various other sections of the NYS Labor Law.

134. That pursuant to the NYS Labor, one or more of the defendants is liable for the injuries sustained by the plaintiff.

AS AND FOR THE EIGHTH CAUSE OF ACTION
ON BEHALF OF THE PLAINTIFF, JORGE AREVALO

135. Plaintiff realleges and repeats each and every allegation contained in paragraphs 1 through 134 and incorporates each as if fully set forth herein.

136. As a result of the injuries the plaintiff sustained in the accident while the plaintiff was employed by Twins Hardwood Flooring Corp., the plaintiff obtained Workers' Compensation benefits.

137. That upon information and belief, Twins Hardwood Flooring Corp., had a Workers' Compensation policy with Norguard Insurance Company and the plaintiff secured benefits from Norguard Insurance Company, under Claim # TWWC 285243001.

138. Pursuant to the New York State Workers' Compensation Law, the Workers' Compensation Carrier has a lien, in the event of a recovery by the plaintiff in a third-party lawsuit for benefits paid to the injured worker.

139. Pursuant to the New York State Workers' Compensation Law, the plaintiff has an obligation to obtain the approval of the Workers' Compensation Insurance Carrier and the Workers' Compensation Board, if the plaintiff intends to settle the third-party case.

140. Upon information and belief, the lien of Norguard Insurance Company is for all benefits paid pursuant to the claim of the plaintiff, who was the claimant in the Workers' Compensation case.

141. That upon information and belief, Norguard Insurance Company, has a right to recover their lien.

142. Based upon the plaintiff's obligations, pursuant to the New York Workers' Compensation Law, the plaintiff requests reimbursement of an amount that Norguard Insurance Carrier is entitled to receive for its lien.

WHEREFORE, plaintiff, JORGE AREVALO, in all eight causes of action, has been damaged and demands judgment against the defendants and requests money damages in an amount that exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction, together with the costs and disbursements of this action.

Dated: Tarrytown, New York
September 5, 2024

CHARLES R. GREEBEL, ESQ.
Attorney for Plaintiff
15 Neperan Road
Tarrytown, New York 10591
(914) 631-5900

STATE OF NEW YORK, WESTCHESTER COUNTY ss.:

I, JORGE AREVALO, being duly sworn, deposes and says: deponent is the plaintiff in the within action; deponent has read the foregoing Complaint and knows the contents thereof; and the same is true to deponent's own knowledge, except as to the matters therein stated to be alleged upon information and belief, and as to those matters deponent believes it to be true.

JORGE AREVALO

Sworn to before me this
5th day of September, 2024

Notary Public

CHARLES R. GREEBEL
Notary Public, State of New York
No. 60-6636875
Qualified in Westchester County
Term Expires October 31, 2024

# C E R T I F I C A T I O N

RE: JORGE AREVALO V. KIRK VAN WORMER; TECHTRONIC INDUSTRIES CO. LTD.; TECHTRONIC INDUSTRIES NORTH AMERICA, INC.; ONE WORLD TECHNOLOGIES, INC.; RYOBI TECHNOLOGIES, INC.; HOME DEPOT U.S.A. INC., a/k/a THE HOME DEPOT, INC.; EMERSON ELECTRIC, CO. and RIDGID, INC.

Index No.

The following documents are hereby certified:

VERIFIED COMPLAINT

Dated: Tarrytown, New York
September 5, 2024

By: ______________________
CHARLES R. GREEBEL

CHARLES R. GREEBEL, ESQ.
Attorney for Plaintiff
Office and PO Address
15 Neperan Road
Tarrytown, New York 10591
(914)631-5900

INDEX NO.:
SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

INDEX NO.

JORGE AREVALO,

Plaintiff,

- against -

KIRK VAN WORMER; TECHTRONIC INDUSTRIES CO. LTD.; TECHTRONIC INDUSTRIES NORTH AMERICA, INC.; ONE WORLD TECHNOLOGIES, INC.; RYOBI TECHNOLOGIES, INC.;HOME DEPOT U.S.A. INC., a/k/a THE HOME DEPOT, INC; EMERSON ELECTRIC, CO. and RIDGID, INC.,

Defendants.

SUMMONS WITH NOTICE AND VERIFIED COMPLAINT

CHARLES R. GREEBEL, ESQ.
Attorney for Plaintiff
15 Neperan Road
Tarrytown, New York 10591
(914)631-5900

TO:

Due and timely service of a copy of the within ____________ is hereby admitted.

Dated: , 2024

Attorney(s) for

# NOTICE OF HARD COPY SUBMISSION - - E-FILED CASE

**(This Form Must be Annexed to Hard Copy Submissions in E-Filed Cases)**

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF** Westchester
------------------------------------------------------------x
Jorge Arevalo

**Plaintiff/Petitioner,**

**- against -**

Kirk Van Wormer

**Defendant/Respondent.**
------------------------------------------------------------x

**Index No.** 50524/24

When permitted to submit original hard copy documents in e-filed cases, indicate the reason for hard copy submission by checking the relevant box and signing below.

**Non-Participating Counsel**

**The attached is a court original unless and until uploaded to NYSCEF.**

[✓] In a **consensual** case, I am authorized to and have served on all other parties a declination of consent to e-filing on behalf of my client, a party to this case.

[✓] In a **mandatory** case, I am exempt from the requirement to e-file because I have filed with the clerk of the court where this action is pending the opt-out form required by the Rules or the court has granted my application upon good cause shown.

**Participating Counsel and Participating Unrepresented Litigants**

**Submissions Requiring Subsequent E-Filing (filer is responsible for upload to NYSCEF)**

[ ] I am submitting a proposed order to show cause and supporting papers seeking a TRO, together with the required showing that I or my client will be significantly prejudiced by giving notice. If the court directs service in hard copy only, I shall e-file these documents within 3 business days after service.

[ ] I am filing this document in hard copy under the emergency exception and am submitting the required affirmation/affidavit of explanation. I shall, as required by the Rules, e-file these documents within 3 business days thereafter.

[ ] I am filing this document in hard copy because of a technical failure on the e-filing site as defined in the E-Filing Rules. I shall, as required by the Rules, e-file these documents within 3 business days after restoration of normal operations at the site.

[ ] I am submitting an ex parte application pursuant to statute ______________________. If these documents are served in hard copy only, I shall, as required by the E-Filing Rules, e-file these documents within 3 business days after service.

**Special Applications/Documents (filer may be responsible for upload to NYSCEF)**

[ ] I am applying for an order ☐ sealing / ☐ limiting access to document(s) and I am submitting the application in hard copy form, as permitted by court protocol/procedure.

[ ] I am submitting documents for in camera review.

[ ] I am filing an exhibit that cannot be e-filed (Rule 202.5-b(d)(7)).

Dated: 9/6/24

[signature] (Signature)

Charles R Greebel, Esq (Name)

_______________ (Firm Name)

15 Neperan Road (Address)

Tarrytown, ny 10591

914-631-5900 (Phone)

N/A (E-Mail)

1/17/18